UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PATH AMERICA KINGCO LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al., <br><br> Defendants. | CASE NO. C17-1485 RSM <br><br> ORDER RE: MOTIONS FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on the parties' Cross Motions for Summary Judgment. Dkts. #49 and #53. Plaintiffs in this case are 157 individuals seeking to immigrate to this country under the EB-5 Visa Program; Defendants are those government agencies and individuals who issued decisions that have interfered with Plaintiffs' visa applications. Plaintiffs filed this action challenging those decisions as arbitrary and capricious under the Administrative Procedures Act ("APA"). For the reasons stated below, the Court GRANTS Plaintiffs' Motion and DENIES Defendants' Motion.

//

//

## II. BACKGROUND

A. **Statutory Background on the EB-5 Visa**

In 1990, Congress amended the Immigration and Nationality Act to provide for classification of "employment creation immigrants who invest capital in new commercial enterprises in the United States that create full-time employment of United States workers" (referred to as the "EB-5 program"). *See* Immigration Act of 1990, Pub. L. No. 101-649, § 121(a) (Nov. 29, 1990) (codified at 8 U.S.C. § 1153(b)(5)). The amount of investment required was originally set at $1,000,000, but foreign nationals may qualify by investing at least $500,000 in a "targeted employment area." 8 U.S.C. §§ 1153(b)(5)(B)(ii), (C); 8 C.F.R. § 204.6(f). The investment must "create fulltime employment for not fewer than [ten] United States citizens or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States[.]" 8 U.S.C. § 1153(b)(5)(A)(ii). If USCIS determines that a foreign national's investment qualifies under the employment creation program, the agency may then grant permanent resident status to the qualifying foreign national for a conditional two-year period. *See* 8 U.S.C. § 1186b(a)(1).

In 1992, Congress further expanded this program by establishing the regional center pilot program, which authorized "regional center[s] in the United States … for the promotion of economic growth, including increased export sales, improved regional productivity, job creation, or increased domestic capital investment." *See* Departments of State, Justice, and Commerce, the Judiciary and Related Agencies Appropriations Act of 1992, Pub. L. No. 102-395, § 610(a) (Oct. 6, 1992) (8 U.S.C. § 1153). This program allows economic entities to seek regional center status with USCIS for the purpose of soliciting and pooling funds from foreign national investors and other private or public investors, to fund development projects in targeted employment areas. *See* 58

Fed. Reg. 44,606; 44,608 (former Immigration and Naturalization Service ("INS")) (Aug. 24, 1993).

A prospective EB-5 foreign national investor starts the process by filing a Form I-526 with USCIS ("I-526 petition" or "EB-5 petition"). 8 C.F.R. § 204.6(a), (c). This petition must include evidence that the petitioner has invested or is actively in the process of investing "lawfully obtained capital in a new commercial enterprise in the United States which will create full time positions for not fewer than [ten] qualifying employees." 8 C.F.R. § 204.6(j). Petitioners who invest in a new commercial enterprise associated with an approved regional center still are required to demonstrate that their investment will result in the creation of at least ten full time positions, but they may rely on indirect job creation. *See* 8 C.F.R. § 204.6(m)(7). Indirect jobs are those that are held outside of the new commercial enterprise, but which are created as a result of the petitioner's investment into the new commercial enterprise. 8 C.F.R. §§ 204.6(j)(4)(iii), (m)(3), (m)(7).

EB-5 petitioners must demonstrate their eligibility throughout adjudication. 8 C.F.R. § 103.2(b)(1). An I-526 petition will not be approved if, after filing, the petitioner becomes ineligible under a new set of facts or circumstances. *See Matter of Izummi*, 22 I. & N. Dec. 169, 176 (Assoc. Comm. 1998). USCIS may deny the petition if, *inter alia*, an EB-5 investor fails to demonstrate that that they have "placed the required amount of capital at risk for the purpose of generating a return on the capital placed at risk." 8 C.F.R. § 204.6(j)(2). If the regional center does not submit certain required information, or the agency determines that it no longer serves the purposes of the EB-5 program, USCIS may terminate the regional center's designation. 8 C.F.R. § 204.6(m)(6)(ii). USCIS's termination of a regional center's status results in the loss of EB-5 visas for the foreign national investors associated with the terminated center.

Prior to termination, USCIS will issue a "Notice of Intent to Terminate" and give the regional center thirty days to submit a response. 8 C.F.R. §§ 204.6(m)(6)(iii)-(iv). After a termination, the applicant may appeal to USCIS's Administrative Appeals Office ("AAO"). *See* 8 C.F.R. § 204.6(m)(6)(v). If the AAO dismisses the appeal, the applicant may file a motion to reopen and reconsider the AAO's decision. *See* 8 C.F.R. § 103.5(a).

### B. Nature of the Investment at Issue

This case involves 157 EB-5 investors who contributed $78.5 million to build a mixed-use tower in downtown Seattle. These investors made their individual $500,000 capital contributions through a regional center called Path America KingCo, LLC ("Path America KingCo").

### C. SEC Complaint against Path America

On August 24, 2015, the SEC filed a complaint in this district court against Path America, several related entities, and Path America's principal, Lobsang Dargey. *See* Path America, Case No. 2:15-cv-1350. The SEC alleged defendants sold securities to finance several specific real estate development projects, but that Mr. Dargey then misappropriated or diverted millions of dollars in investor funds for other real estate projects or his personal use. *Id*. In a September 2015 filing, the SEC argued that Mr. Dargey's fraud had seriously jeopardized the Tower Project. *Id*. In October 2015, the district court froze the assets of Path America KingCo and its related entities and appointed a receiver to manage those assets. *Id*.

Four months later, on December 24, 2015, USCIS issued a Notice of Intent to Terminate Path America KingCo's regional center designation. Dkt. #40 (Certified Administrative Record, herein "A.R."), 3384-98. In the Notice, USCIS discussed the district court's temporary restraining order, asset freeze, preliminary injunction, and the appointment of a receiver to manage Path America KingCo following Mr. Dargey's diversion of investor funds for personal use or other real

estate projects. A.R. at 3384-98. USCIS stated that all of this supported the conclusion that Path America KingCo failed to fulfill its management responsibilities as detailed in its regional center designation approval letter. *Id*. The agency also concluded that all of this indicated that Path America KingCo no longer served the purpose of promoting economic growth. Path America KingCo responded to the Notice on January 20, 2016. A.R. 3470-77.

On March 23, 2016, USCIS terminated Path America KingCo's regional center designation. A.R. 3479-3502. USCIS determined that Path America KingCo (1) was no longer serving the purpose of promoting economic growth, (2) had diverted funds from job creating purposes, and (3) had not met the monitoring and oversight responsibilities set forth in its designation letter. *Id*. The agency also concluded that Path America KingCo had not set forth sufficient reasons in its response to delay the termination decision. *Id*.

Path America KingCo appealed to the AAO. A.R. 3542-3719. It submitted documentation indicating that Mr. Dargey no longer controlled Path America KingCo or related investor funds, and that a new management company, EB-5 Group, LLC ("EB-5 Group"), would take permanent control over Path America KingCo. *Id*. Path America KingCo also pointed out that the district court in the SEC action had approved a proposal for restructuring the transactions for the Tower Project. *Id*. The court-approved proposal was submitted by Bianjiang, a previous equity partner, and PH Seattle Tower I, LLC ("Molasky Group"). *Id*. The district court's order provided for the transfer of 100% ownership interest in Path America KingCo to Molasky, which would turn over management of the Tower Project to the EB-5 Group. *Id*. The proposal also gave Path America KingCo's EB-5 investors the option to opt-in to the proposed restructuring plan. *Id*.

On November 2, 2016, the AAO dismissed Path America KingCo's appeal and found that USCIS had properly terminated Path America KingCo's regional center designation. A.R. 5146-

54. Path America KingCo filed a motion to reopen and reconsider on December 1, 2016. A.R. 5183-5921.

In January 2017, Mr. Dargey pled guilty to two federal felonies related to his actions while principal of Path America KingCo and agreed to pay over $24 million in restitution. A.R. 7584-85. Mr. Dargey was sentenced to four years in prison for defrauding immigrant investors and federal regulators in the EB-5 program. A.R. 7586-88.

On June 9, 2017, the AAO denied Path America KingCo's motions to reopen and reconsider. A.R. at 5922-28. The AAO found no error in its previous decision to dismiss Path America KingCo's appeal. The AAO also denied Path America KingCo's motion to reopen because its evidence of new management and project plans were insufficient to outweigh the negative considerations in the case. *Id*. The AAO concluded that Path America KingCo did not merit continued regional center designation. *Id*.

On October 2, 2017, Plaintiffs filed this action under the Administrative Procedures Act ("APA") challenging the agency's termination of Path America KingCo's designation as a regional center. Dkt. #1. This Court granted the parties' stipulated motion to stay proceedings to allow the AAO to reopen the matter on service motion and review the prior decisions.

On June 21, 2018, the AAO *sua sponte* vacated and reopened its previously final decision regarding the termination of Path America KingCo's regional center status, pursuant to 8 C.F.R. § 103.5(a)(5)(ii). A.R. 5929-30. Following reopening, Path America KingCo submitted additional briefing and evidence, and argued that the evidence demonstrates its continued promotion of economic growth and job creation. *See* A.R. 5931-7561.

On December 4, 2018, the AAO issued a twenty-page decision affirming the termination of Path America KingCo's regional center designation. A.R. 7563-83. The instant Motions followed.

## III. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The APA provides for judicial review of final agency decisions. 5 U.S.C. §§ 702, 706. Courts routinely resolve APA challenges to an agency's administrative decision by summary judgment. *Nw. Motorcycle Ass'n v. U.S. Dept. of Agric.*, 18 F.3d 1468, 1481 (9th Cir. 1994). However, in cases involving review of a final agency action under the APA, courts do not utilize the standard analysis under Fed. R. Civ. P. 56 for determining whether a genuine issue of material fact exists "because of the limited role of a court in reviewing the administrative record." *Sierra*

*Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006) (citations omitted); *see also Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985). The Court "is not required to resolve any facts in a review of an administrative proceeding"). Rather, summary judgment serves as the mechanism for deciding, as a matter of law, whether agency action is supported by the administrative record and otherwise consistent with the APA standard of review. *Sierra Club*, 459 F. Supp. 2d at 90 (citations omitted).

The APA provides that a court "shall. . . hold unlawful and set aside agency action. . . found to be. . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). To satisfy this standard, an agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125, 195 L. Ed. 2d 382 (2016) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983)). "[I]f an agency relies on two grounds for a decision, a court may sustain it if one is valid and if the agency would clearly have acted on that ground even if the other were unavailable." *Syracuse Peace Council v. FCC*, 867 F.2d 654, 657, 276 U.S. App. D.C. 38 (D.C. Cir. 1989). However, because "a reviewing court. . . must judge the propriety of [agency] action solely by the grounds invoked by the agency," post hoc explanations that the agency did not articulate when it acted are insufficient. *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947).

### B. Reopening vs. Reconsidering

Under USCIS regulations there are two ways to challenge a final agency decision: motions to reopen and motions to reconsider. Motions to reopen state "new facts to be provided in the reopened proceeding" and are "supported by…documentary evidence." 8 C.F.R. § 103.5(a)(2).

Motions to reopen introduce new "evidence that was not previously a matter of record." *See Iturribarria v. INS*, 321 F.3d 889, 896 (9th Cir. 2003) (quoting *Matter of Cerna*, 20 I. & N. Dec. 399, 400 (BIA 1991)). A motion to reconsider, on the other hand, is used to argue that USCIS's prior decision was wrong on its own terms "based on the evidence of record at the time of the initial decision." 8 C.F.R. § 103.5(a)(3). Unlike a motion to reopen, "[t]he purpose of a motion to reconsider is not to raise *new* facts, but rather to demonstrate that the [agency] erred as a matter of law or fact" based on the original record. *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1180 n.2 (9th Cir. 2001) (en banc) (emphasis in original); 8 C.F.R. § 103.5(a)(3).

On June 21, 2018, USCIS clearly reopened Path America KingCo's termination proceedings on its own motion. AR 5929 ("We are reopening this matter on Service motion…"). USCIS invited Path America KingCo to submit additional evidence. However, in its final post-reopening decision, the AAO stated that "[i]n reopening a case, we generally look at whether the original decision was factually or legally in error at the time it was issued." A.R. 7576; *see also* A.R. 7566 (analyzing "whether [Path America KingCo] has documented it was continuing promotion of economic growth prior to and at the time of" the AAO's initial termination decision).

Plaintiffs argue that USCIS failed to consider all "new facts" and "documentary evidence" relevant to termination as required by 8 C.F.R. § 103.5(a)(2), effectively blinding itself to "vital information" establishing that Path America KingCo was actively promoting economic growth. Dkt. #49 at 18–19 (citing *Patel v. Gonzales*, 442 F.3d 1011, 1016 (7th Cir. 2006)).

USCIS argues that:

> The AAO also noted that its analysis of whether Path America was "continuing to promote economic growth" considers Path America's performance from the date of its initial designation as a regional center, rather than the date that new owners took control after its restructure. A.R. 7571. The AAO concluded that Path America did not

>meet its burden of demonstrating continued eligibility for regional center designation, based all the negative factors indicating that Path America had not engaged in the continuous promotion of economic growth. *Id.* at 7563-83.

Dkt. #53 at 14. This indicates that USCIS was and still is de-emphasizing the change in circumstances presented by Plaintiffs as new facts.

USCIS contends the record shows it considered all the facts, including new facts submitted by Plaintiffs. However, the Court is left with the distinct impression that Defendants improperly weighed the old situation (Dargey misappropriating funds) equally with the new situation (the regional center in receivership and carrying on its mission), that this prejudiced Plaintiffs' motion, and that it led to USCIS arbitrarily concluding that Path America KingCo was not "continuing to promote economic growth." Just because a regional center failed to promote economic growth for a short period while management changed hands does not mean that the regional center has not continued to promote economic growth after that point, when it in fact provided jobs on a successful construction project. The Court concludes that remand to USCIS is appropriate for further determination under the correct motion to reopen legal standard.[1]

**C. Whether Plaintiffs Continued to have an Investment Risk**

To qualify for an EB-5 visa, a foreign investor must establish that she has "invested" capital in a "new commercial enterprise." 8 U.S.C. § 1153(b)(5). USCIS argues that Dargey's misappropriation of a portion of the investors' funds prevents the investors from showing that they placed their capital "at risk" as required by 8 C.F.R. § 204.6(j)(2). *See* A.R. 7573-75. Plaintiffs

---

[1] The Court agrees with Plaintiffs' argument that USCIS cannot justify misapplying the motion to reopen regulation by arguing that its original termination decision was "final agency action." *See* Dkt. #49 at 19–20; *6801 Realty Co., LLC v. USCIS*, 719 F. App'x 58, 60 (2d Cir. 2018) ("USCIS's reopening rendered the initial visa denial non-final"); *Bhasin v. DHS*, 413 F. App'x 983, 985 (9th Cir. 2011) (where USCIS "reopened" proceedings, its previous "denial [was] not a 'final agency action'").

argue that Dargey's diversion of funds "in no way negates the fact that Plaintiffs-investors contributed capital or placed it 'at risk for the purpose of generating a return.'" Dkt. #49 at 24 (citing 8 C.F.R. § 204.6(j)(2)). Plaintiffs point out that there is no allegation that they entered into any prohibited debt arrangements that could insulate their investments from risk of loss. *Id*. at 25 (citing 8 C.F.R. § 204.6(e)). Plaintiffs maintain it is "absurd to say that a person has not 'invested' capital in a business because after the investment is made, a third-party misuses some of the money." *Id*. at 26. Plaintiffs also argue:

> Even if USCIS correctly interpreted the "at risk" provision, it acted improperly by importing the requirement into KingCo's termination proceeding. The "at risk" requirement applies to EB-5 visa petitions. See 8 C.F.R. § 204.6(j)(2). But regional center terminations decisions are governed by a different regulation, which asks whether the regional center is continuing to promote economic growth and job-creation. *Id.* § 204.6(m)(6)(ii)(B). It was error for USCIS to "unilaterally impose" on KingCo requirements that apply to EB-5 investors and not regional centers. *See Kazarian v. USCIS*, 596 F.3d 1115, 1122 (9th Cir. 2010).

Dkt. #49 at 27.

Defendants contest these points, arguing that the AAO mentioned the capital "at risk" issue as part of its consideration of the negative factors stemming from the harm to individual investors from Mr. Dargey's misappropriation of their EB-5 investment funds and that it was "appropriate for the AAO to consider this as a negative factor that potentially jeopardized their ability qualify for an EB-5 visa." Dkt. #53 at 19–20. Defendants do not explain *why* this was appropriate, or further challenge Plaintiffs' clear distinction between the risks taken by investors and the criminal actions of a third party. The Court agrees with Plaintiffs that reliance on this factor further demonstrates that the AAO's actions were arbitrary and does not serve as a basis to terminate the regional center's status.

### D. The Purposes of the EB-5 Program

Plaintiffs' final argument is that the termination decision was arbitrary and capricious because it was "unmoored" from the purposes underlying the EB-5 program. Dkt. #49 at 29. Plaintiffs cite to *Zhang v. USCIS*, 344 F. Supp. 3d 32, 55-56 (D.D.C. 2018) (rejecting USCIS's interpretation of EB-5 regulation where it was "unmoored from the purposes animating the EB-5 Program"). Plaintiffs maintain that this termination jeopardized job growth by preventing Path America KingCo from developing a new, already identified project, as well as "incentiviz[ing] future victims of EB-5 fraud to withdraw their capital rather than keep their funds invested and complete the regional center's project." Dkt. #49 at 30.

The Court agrees with Plaintiffs that Defendants offer "no meaningful rebuttal" to these arguments. *See* Dkts. #53 and #56 at 17. At most, Defendants argue that Plaintiffs should be punished for failing to have "effective oversight" over Mr. Dargey, *see* Dkt. #57 at 13, and that this will serve the purposes of the EB-5 program despite the fact that Plaintiffs rectified their failed oversight and made further progress in creating jobs and investing capital in a construction project. The Court does not find this theory convincing, and it clearly outweighed by the arguments of Plaintiffs above. The failure to properly consider Plaintiffs' post-Dargey efforts appears to run contrary to the purposes of the EB-5 program, and this serves as an additional basis to find the prior decision arbitrary and capricious, warranting remand.

### IV. CONCLUSION

Having considered the Motions of the parties and the entire record, the Court hereby finds and ORDERS:

1) Defendants' Cross Motion for Summary Judgment (Dkt. #53) is DENIED.

2) Plaintiffs' Motion for Summary Judgment (Dkt. #49) is GRANTED as set forth below.

3) Defendant USCIS's December 4, 2018, decision affirming Path America KingCo's termination was arbitrary and capricious in violation of the APA for the reasons stated above. This decision is REVERSED and REMANDED back to the AAO for further proceedings consistent with this Order.

4) Defendant USCIS shall reopen and re-adjudicate the I-526 petitions of Plaintiff-investors.

5) The parties shall file a joint status report with the Court within 90 days of this Order.

6) This case is CLOSED.

Dated this 12th day of December 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE